UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

Application of BGC BROKERS L.P.,
MARTIN BROKERS GROUP LIMITED
and BGC SERVICES (HOLDINGS) LLP,
To The Southern District of New York for
Assistance Pursuant to 28 U.S.C. §1782

---

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF BGC BROKERS L.P.,
MARTIN BROKERS GROUP LIMITED and BGC SERVICES (HOLDINGS) LLP FOR
ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Howard M. Rogatnick (HR 3777)
BRYAN CAVE LEIGHTON PAISNER LLP
hmrogatnick@bryancave.com
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212-541-2000
Facsimile: 212-541-4630

*Counsel for Applicant*

12610999.6

# TABLE OF CONTENTS

                                                                                                                      **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 1

         Discovery Applications In the English Court ................................................................. 3

THE DISCOVERY NOW SOUGHT ........................................................................................ 4

APPLICABLE LAW .................................................................................................................. 6

ARGUMENT ............................................................................................................................... 9

I.     THIS APPLICATION MEETS THE STATUTORY REQUIREMENTS OF § 1782 BECAUSE THE TARGET OF THE REQUESTED DISCOVERY IS LOCATED IN THIS DISTRICT, THE DISCOVERY IS FOR USE IN A FOREIGN PROCEEDING, AND THE APPLICANTS ARE PARTIES TO THE FOREIGN PROCEEDING ..................................................................................................................... 9

        A.     The Targets of the Requested Discovery Reside or Are Found in the Southern District of New York. ........................................................................ 9

        B.     The Discovery Is for Use in a Proceeding Before a Foreign Tribunal. ............ 10

        C.     The Applicants Are "Interested Persons." ........................................................ 10

II.    THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THIS APPLICATION. ......................................................................................................... 11

        A.     The Discovery Is Sought from a Nonparticipant in the Foreign Proceeding. ........ 11

        B.     The English Judiciary Is Receptive to Discovery Assistance from U.S. Federal Courts. ..................................................................................................12

        C.     The Applicants' Discovery Requests Are Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions or any Other Policies. ...............................13

        D.     The Discovery Sought is Not Unduly Burdensome ...............................................15

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**

*Application of Esses,*
    101 F.3d 873 (2d Cir. 1996) .................................................................................................. 8

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery,*
    121 F.3d 77 (2d Cir. 1997) .................................................................................................. 14

*In re Application for an Order Pursuant to 28 U.S.C. § 1782*
    *to Conduct Discovery for Use in Foreign Proceedings,*
    773 F.3d 456 (2d Cir. 2014) .................................................................................................. 7

*In re Application of Chevron Corp.,*
    709 F. Supp. 2d 283 (S.D.N.Y. 2010), *aff'd sub nom. Chevron Corp. v. Berlinger,*
    629 F.3d 297 (2d Cir. 2011) .................................................................................................. 4

*In re Application of Euromepa S.A.,*
    51 F.3d 1095 (2d Cir. 1995) ..................................................................................... 7, 13, 14

*In re Application of Guy,*
    No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) .............................................. 12

*In re Application of Malev Hungarian Airlines,*
    964 F.2d 97 (2d Cir.), *cert. denied,* 506 U.S. 861 (1992) .......................................... 7, 11, 15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012) ........................................................................................ 7, 8, 10

*In re Children's Invs. Fund Foundation (UK),*
    363 F. Supp. 3d 361 (S.D.N.Y. 2019) ................................................................................ 10

*Euromepa, S.A. v. R. Esmerian, Inc.,*
    154 F.3d 24 (2d Cir. 1998) .................................................................................................. 14

*In re Ex Parte App. Of Kleimar N.V.,*
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) ................................................................................ 10

*In re Imanagement Servs., Ltd.,*
    No. Misc. 05-89(FB), 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ................................ 15

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ..................................................................................................... *passim*

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus,*
    62 F. Supp. 3d 358 (S.D.N.Y. 2014) .................................................................................. 10

12610999.6

*Lancaster Factoring Co., Ltd. V. Mangone*,
    90 F.3d 38 (2d Cir. 1996) .................................................................................................. 11

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
    539 F.2d 1216 (9th Cir.1976) ............................................................................................. 8

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ................................................................................ 7, 9, 10, 13

*Nokia Corp. v. Interdigital Tech. Corp.*,
    (2004) EWHC 2920 ..................................................................................................... 12, 14

*In re Republic of Kazakhstan for an Order Directing Discovery
    from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*
    110 F. Supp. 3d 512 (S.D.N.Y. 2015) ............................................................................... 14

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) .................................................................................................. 7

*South Carolina Ins. Co. v. Maatschappij "De Zeven Provincien" NV.*,
    (1987) 1 A.C. 24 ........................................................................................................... 12, 14

## OTHER AUTHORITIES

28 U.S.C. § 1782 ........................................................................................................... *passim*

28 U.S.C. § 1782(a) ............................................................................................................. 6, 9

Fed. R. Civ. Proc. 30(b)(6) ...................................................................................................... 5

S. Rep. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3783, 20 ......................... 7

12610999.6

## PRELIMINARY STATEMENT

BGC Brokers L.P., Martin Brokers Group Limited and BGC Services (Holdings) LLP (collectively, herein, the "Applicants" or "BGC") submit this Memorandum of Law in support of their Application for an order to take evidence pursuant to 28 U.S.C. § 1782 from Michael Leibowitz ("Leibowitz"), Laurence Holyoake ("Holyoake") and Tradition America Holdings, Inc. ("Tradition America"), all of whom are found in this judicial district and have information relevant to the claims at issue in an action commenced by Applicants in the High Court of Justice in England. The Applicants squarely meet the statutory requirements of 28 U.S.C. § 1782, which allows a party to a foreign judicial proceeding, on an *ex parte* application, to take discovery from third parties residing or found in this district. Additionally, as shown below, the discretionary factors articulated by the Supreme Court as relevant to determining applications for discovery under 28 U.S.C. § 1782 all weigh in favor of granting the application.

## FACTUAL BACKGROUND

This application arises from a litigation brought by BGC, Cantor Fitzgerald's heir listed entity, against Tradition (UK) Limited ("Tradition UK"), Anthony Vowell ("Vowell"), and Michael Anderson ("Anderson") in the High Court of Justice in England (hereinafter, the "English Litigation").[1] (*See* Rogatnick Affirmation, Exhibit 1.) The English Litigation is being heard and case managed together with a parallel set of proceedings being brought by Martin Brokers Group Ltd (a company within the BGC group of companies), against Tradition UK and its employee Paul Bell, who left Martin Brokers Group Ltd. to join Tradition. The two sets of proceedings in the English Litigation are case managed together pursuant to an Order of the High Court dated April 16, 2018, and information and documents that are disclosed in one set of proceedings is admissible in the other set of proceedings pursuant to a further Order dated July 24, 2018.

---

[1] The English Litigation is entitled: BGC & ors -v- Tradition & ors (QB-2017-000090) and Martin Brokers Group Ltd v. (1) Paul Bell (2) Tradition (UK) Limited (QB-2017-000089).

12610999.6

The Applicants are part of the BGC group of companies, which carries on various businesses, including as an inter-dealer broker. Tradition, the First Defendant in the English Litigation, also carries on business as an inter-dealer broker. BGC and Tradition UK are competitors. Vowell, the Second Defendant in the English Litigation, is an employee of Tradition UK. Anderson, the Fifth Defendant in the English Litigation, has been, since in or about September 2016, the joint CEO of Tradition UK. Tradition UK, Vowell and Anderson are together referred to as the "Tradition Defendants."

BGC's claims in the English Litigation concern the illegal transfer of confidential information from BGC to Tradition UK. The Tradition Defendants in the English Litigation have admitted that a variety of such confidential financial information was passed by an employee of BGC, Simon Cuddihy (" Cuddihy"), to Vowell, who in turn, it is alleged, passed it on to Anderson. This confidential information was derived from, and consisted in part of, copies of certain BGC spreadsheets which set out the revenues generated by individual brokers and desks working at BGC. Cuddihy's Junior colleague, Robert Goan ("Goan"), improperly had access to these spreadsheets, and furnished them to Mr. Cuddihy.

In the English Litigation, BGC alleges that, in addition to Vowell, Tradition UK's senior management, including Anderson, requested, received, used and transmitted the confidential information. Confidential information concerning BGC was also shared with senior staff of Tradition America, including Leibowitz, the CEO of Tradition America, and Holyoake, who is also employed by Tradition America. Discovery in the instant Application is sought from these two individuals, as well as from Tradition America. *See infra* pp. 4-6. Anderson was eager to impose his influence on Tradition UK and to drive it to compete with larger inter-dealer brokers. BGC's allegations in the English Litigation also rely on evidence of Tradition UK's attempted recruitment of Camille Gagnaire ("Gagnaire"), another of BGC's brokers, who received a very generous offer

2

from Tradition UK without Tradition UK taking any steps to verify his remuneration at BGC (presumably because Tradition UK had already improperly received confidential information from BGC relevant to Gagnaire's remuneration).

It is central to BGC's allegations in the English Litigation that the information illegally obtained by the Tradition Defendants was highly confidential, and that Tradition UK, an established brokerage firm, as well as Vowell and Anderson, knew and understood that the information was highly confidential. The essence of BGC's claims is that the Tradition Defendants breached their equitable duties of confidence to BGC, in violation of English law. The Tradition Defendants also illegally procured Cuddihy and Goan's breaches of their contractual and equitable duties owed to their employer, BGC. Further, it is agreed among the parties in the English Litigation that Tradition UK is in various material respects vicariously liable for the acts of Anderson and Vowell. Consequently, BGC has asserted in the English Litigation that it is entitled to injunctive relief, as well as an award for damages and loss caused by the Tradition Defendants' illegal conduct.

**Discovery Applications In the English Court**

Despite various hearings in the English Litigation during which the scope and adequacy of Tradition UK's disclosure has been contested, Tradition UK's disclosure to date has been inadequate.

Of particular relevance here is the fact that BGC sought discovery in the English Litigation from Leibowitz and Holyoake, two individuals employed by Tradition America, from whom discovery is being sought pursuant to the present § 1782 application. Despite BGC's requests, Tradition Defendants did not produce discovery from these individuals. Tradition UK's counsel in the English Litigation explained his refusal to provide discovery from Leibowitz in relevant part as follows:

> Mr. Leibowitz is employed by Tradition America Holdings, Inc. and is not based in the jurisdiction. As a result, his documents are not

3

> under Tradition UK's control and Tradition UK has no right to call for them. Furthermore, I am instructed that these documents are held on servers that are based out of the jurisdiction and not managed by Tradition UK's IT function. For the avoidance of doubt, Tradition UK's IT function cannot access the documents that are held on these servers.

(See Rogatnick Affirmation, Exhibit 2, First Witness Statement of Masoud Zabeti on behalf of Tradition dated April 5, 2019, Par. 48(d).)

In refusing to produce information requested from Holyoake in the English Litigation, Tradition UK's counsel similarly commented that:

> Mr. Holyoake is employed by Tradition America Holdings, Inc. and is based outside the jurisdiction. As with Mr. Leibowitz, Mr. Holyoake's documents are not under Tradition UK's control and Tradition UK has no right to call for them.

(*See* Exhibit 2, *Id.* at Par. 48(e).) Although it is not required that an applicant demonstrate that it was unable to obtain discovery in the foreign proceeding in order to be entitled to assistance under § 1782, the inability to obtain discovery in a foreign proceeding supports the grant of a § 1782 application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (courts should consider whether material "may be unobtainable absent § 1782(a) aid" in deciding whether to grant § 1782 application); *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010) (the fact that party "who is in sole possession of the [documents sought], is located in this district and is not a party to any of the foreign proceedings" weighs in favor of granting 1782 application), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011).

## THE DISCOVERY NOW SOUGHT

This Application seeks the production of documents from, and the deposition testimony of, two individuals and an entity found in this judicial district who have information relevant to the claims at issue in the English Litigation. The two individuals are Mr. Michael Leibowitz, the CEO of Tradition America and Mr. Laurence Holyoake, who is also employed by Tradition America.

4

This Application also seeks permission to serve subpoenas on Tradition America requesting the production of documents and the deposition testimony of a corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6). If permitted, Applicants will, in accordance with the Federal Rules of Civil Procedure, seek non-privileged documents from Leibowitz, Holyoake and Tradition America that are relevant to BGC's claim in the English Litigation.

Copies of the Subpoenas that the Applicants propose to serve on Messrs. Leibowitz and Holyoake, and on Tradition America, are attached to the contemporaneously filed Affirmation of Howard M. Rogatnick ("Rogatnick Affirmation") as Exhibits 3, 4, and 5.

The information requested, and set forth in subpoenas for the production of documents, includes the following from the time period of January 1, 2016 through the present:

> (1) Documents concerning Leibowitz's, Holyoake's, or Tradition America's receipt, possession, procurement or use of any of the Applicants' Confidential Information;[2]
>
> (2) Documents concerning the potential recruitment by Leibowitz, Holyoake, Tradition America, Tradition UK, Vowell, Cuddihy, Goan, and/or Anderson, collectively, individually, or in any combination, of employees or partners of Applicants and their associated companies; and
>
> (3) Communications between or among Leibowitz, Holyoake, and/or Tradition America, collectively, individually, or in any combination, and Cuddihy, Goan, Vowell, Anderson, and/or

---

[2] For purposes of these subpoenas, "Confidential Information" means (i) any information concerning the revenues generated in the course of Applicants' business by any individual broker or by any desk; (ii) any information concerning the business activities of Applicants, which has, directly or indirectly, been provided to Leibowitz, Holyoake, Tradition America, collectively, individually, or in any combination, by Cuddihy, Goan, Vowell, Anderson, and/or Tradition UK, collectively, individually, or in any combination; (iii) any information concerning the business activities of Applicants, which has, directly or indirectly, been provided to Cuddihy, Goan, Vowell, Anderson, and/or Tradition UK, collectively, individually, or in any combination, by Leibowitz, Holyoake, and/or Tradition America, collectively, individually, or in any combination; (iv) any information concerning Applicant's market share; (v) any information concerning Applicant's short, medium, and long Interest Rate Swap revenues; (vi) any information concerning Applicants' dealings with any customer or counterparty of Applicants; (vii) any information concerning Applicants' strategic business planning; (viii) any information concerning the remuneration or benefits of Applicants' employees; (ix) any information concerning the terms of employment of Applicants' employees; and (x) any information concerning the BR08 document, as identified in the Re-Amended Particulars of Claim in Claim HQ17X03689 (Rogatnick Affirmation, Exhibit 1).

5

Tradition UK, collectively, individually, or in any combination, concerning Applicants' Confidential Information. (*See Id.*)

The above requests are carefully tailored to seek information relevant to the claims at issue in the English Litigation. Moreover, the discovery requests would be limited in time to the period relevant to those claims. Consequently, such discovery is not unduly burdensome or intrusive, and is, in fact, necessary to enable Applicants to obtain information needed to pursue their claims in the English Litigation.

As shown below, the standards applicable to § 1782 are satisfied here and, respectfully, the present Application pursuant to § 1782 should be granted.

## APPLICABLE LAW

The purpose of 28 U.S.C. § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The statute permits the taking of evidence from a person in the United States for use in foreign proceedings. It reads, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. §1782(a).[3] In the seminal decision concerning §1782, the United States Supreme Court held that while the statute does not require a district court to grant the requested discovery, it leaves the decision to the discretion of the court. *Intel*, 542 U.S. at 255.

---

[3] The statute also "shields, privileged material" by providing that a person may not be compelled to provide otherwise privileged documents or testimony. *Intel Corp.*, 542 U.S. at 260.

6

The twin goals of § 1782 are to provide "'equitable and efficacious' discovery procedures in United States courts 'for the benefit of tribunals and litigants involved in litigation with international aspects,' . . . and to 'encourag[e] foreign countries by example to provide similar means of assistance to our courts.'" *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (alteration in original) (quoting S. Rep. No. 88–1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3783, 20), and *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir.), *cert. denied*, 506 U.S. 861 (1992)); *see also In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 460 (2d Cir. 2014) ("*In re § 1782 Application*").

In light of these goals, the Second Circuit has counseled that it is "far preferable" for a district court to order discovery requested under § 1782, perhaps with some restrictions, than to deny the discovery sought. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (citing *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1101 (2d Cir. 1995)).

Following *Intel*, the Second Circuit has held that a district court has the authority to grant a § 1782 application where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by . . . any interested person." *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015) (citing *Brandi-Dohrn*, 673 F.3d at 80 (reversing the district court's order quashing subpoenas issued pursuant to an application under § 1782)).

Once the above statutory requirements are met, "a district court is free to grant discovery in its discretion." *Brandi-Dohrn*, 673 F.3d at 80 (citing *Schmitz*, 376 F.3d at 83-84); *see also In re § 1782 Application*, 773 F.3d at 460. The Second Circuit recognizes a number of additional factors identified by the Supreme Court in *Intel* that inform a district court's exercise of that discretion:

7

> First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.. . .
>
> Second, . . . a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance . . .
>
> [Third,] a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.[4]
>
> [Finally,] unduly intrusive or burdensome requests may be rejected or trimmed.

*Brandi-Dohrn*, 673 F.3d at 80-81 (alterations in original; quoting *Intel*, 542 U.S. at 264-65).

Applications for an order to take evidence pursuant to § 1782 are regularly and appropriately made and granted *ex parte*. *See, e.g., Brandi-Dohrn*, 673 F.3d at 78 (affirming the district court's grant of an order pursuant to an *ex parte* request under § 1782); *Application of Esses*, 101 F.3d 873, 874 (2d Cir. 1996) (same); *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir.1976) (explaining that applications under § 1782 "are customarily received and appropriate action taken with respect thereto ex parte"). This is true because the targets of the requested discovery can exercise "their due process rights by motions to quash the subpoenas." *Id.* Accordingly, this Application is made *ex parte*.

For the reasons noted above and as explained more fully below, § 1782's statutory requirements and the discretionary *Intel* factors are satisfied here, and this Court should therefore

---

[4] We note, however, that § 1782, does not contain a foreign-discoverability requirement, *i.e.*, the applicant is not obliged to show that "what is sought [is] discoverable in the foreign proceeding." *Intel*, 542 U.S. at 252-53, 260-61 (citations omitted).

8

enter an order permitting Applicants to seek documentary and testimonial discovery from Leibowitz, Holyoake and Tradition America.[5]

## ARGUMENT

I. **THIS APPLICATION MEETS THE STATUTORY REQUIREMENTS OF § 1782 BECAUSE THE TARGET OF THE REQUESTED DISCOVERY IS LOCATED IN THIS DISTRICT, THE DISCOVERY IS FOR USE IN A FOREIGN PROCEEDING, AND THE APPLICANTS ARE PARTIES TO THE FOREIGN PROCEEDING**

    A.    **The Targets of the Requested Discovery Reside or Are Found in the Southern District of New York.**

The first statutory requirement is that the party from whom discovery is sought must reside or be found in the Southern District of New York. *Mees*, 793 F.3d at 297-98.

Tradition America's principal place of business is located within the Southern District of New York at 225 Greenwich Street, New York, New York 10007.

Leibowitz is the CEO of Tradition America. Although we have been unable to determine where he resides, as the CEO of Tradition America he may be found at Tradition America's principal place of business, which is located within the Southern District at 255 Greenwich Street, New York, New York 10007.

Holyoake resides within the Southern District at 56 Leonard Street, Apartment 40 BE, New York, New York 10013-3298. As an employee of Tradition America, he may also be found at Tradition America's principal place of business at 255 Greenwich Street, New York, New York 10007.

Accordingly, the first statutory requirement is met.

---

[5] The default position – and the course sought here by the Applicant – is that the Federal Rule of Civil Procedure should govern the discovery going forward. 28 U.S.C. § 1782(a).

9

### B. The Discovery Is for Use in a Proceeding Before a Foreign Tribunal.

The second statutory requirement is that the discovery requested "is for use in a proceeding before a foreign tribunal." *Mees*, 793 F. 3d at 297-98. The "for use" requirement is a liberal one and only requires a showing "that the materials [the applicant] seeks are to be used at some stage of a foreign proceeding that was within reasonable contemplation." *Id.* at 301. The Second Circuit has held that to satisfy the "for use" requirement, it need *not* be shown that the requested discovery is likely to be discoverable or admissible in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 81-82.

The English High Court unquestionably qualifies as a foreign tribunal within the meaning of § 1782. Courts have recognized that litigation in the English High Court of Justice, such as the English Litigation here, is a "foreign proceeding" within the meaning of §1782. *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 361-62 (S.D.N.Y. 2014) (holding that Section "1782 provides statutory authority for [a] subpoena" for discovery in aid of proceeding in UK); *In re Children's Invs. Fund Foundation (UK)*, 363 F. Supp. 3d 361, 374 (S.D.N.Y. 2019) (granting 1782 application for discovery in aid of arbitration in London); *In re Ex Parte App. Of Kleimar N.V.*, 220 F. Supp. 3d 517, 521-22 (S.D.N.Y. 2016) (denying motion to quash 1782 subpoena for discovery in aid of arbitration in London). The Applicants seek to use the requested discovery to support allegations and claims that they have asserted in the English Litigation currently pending before the English High Court. Thus, the second statutory requirement is clearly met.

### C. The Applicants Are "Interested Persons."

The third statutory requirement is that the entity seeking discovery be an interested person in relation to the foreign proceeding. *Mees*, 793 F.3d at 297-98.

10

As the Supreme Court explained in *Intel*, "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256 (alteration in original); *Lancaster Factoring Co., Ltd. V. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation.'") (citation omitted).

The Applicants, as named parties in the currently pending English Litigation, are clearly "interested person[s]" under § 1782.[6]

## II. THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THIS APPLICATION.

As shown above, each of the threshold requirements for the issuance of an order pursuant to § 1782 has been met. Additionally, each of the four discretionary factors outlined by the Supreme Court in *Intel* weighs in favor of granting this Application.

### A. The Discovery Is Sought from a Nonparticipant in the Foreign Proceeding.

In *Intel,* the Supreme Court explained that whether the party from whom discovery was sought is a party in the foreign proceeding is a discretionary factor that the district court should consider in deciding whether to allow discovery under § 1782. "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Conversely, allowing discovery under § 1782 from a party to the underlying foreign litigation could circumvent procedural or other limitations desired by the foreign proceeding. *Id.*

---

[6] Moreover, courts are of a single voice in holding that an interested party may commence proceedings pursuant to § 1782 *without* a foreign court order directing discovery. *See In re Application of Malev Hungarian Airlines*, 964 F.2d at 101 ("We believe it was improper for the district court to predicate its denial of an application for discovery under 28 U.S.C. § 1782 on the absence of a request for assistance from the Hungarian court.").

11

Here, neither Tradition America, Leibowitz nor Holyoake, from whom discovery is sought, are parties to the foreign proceedings. This discretionary factor thus weighs in favor of granting the Application.

### B. The English Judiciary Is Receptive to Discovery Assistance from U.S. Federal Courts.

In exercising its discretion, a court may also consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Here, the foreign proceeding is in the English High Court, a trial court that "hears the testimony of witnesses and receives documents in evidence, very much as American courts do." *In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004). Witness statements are expected to be exchanged in the English Litigation in summer 2019, creating urgent need for the Applicant to finish gathering evidence in support of its claims.

Moreover, there is no "reason to suppose that the government of the United Kingdom would disfavor granting Applicants relief under § 1782." *In re Application of Guy,* 2004 WL 1857580, at *2. Indeed, in *South Carolina Ins. Co. v. Maatschappij "De Zeven Provincien" NV.*, [1987] 1 A.C. 24, Rogatnick Affirmation, Exhibit 6, the House of Lords reversed a lower court's injunction preventing a party seeking discovery under § 1782 because the party's conduct in seeking to exercise its rights under U.S. law did not in any way depart from or interfere with the procedure of the English court and English litigants are free to pursue evidence elsewhere if done in a lawful manner. *See also Nokia Corp. v. Interdigital Tech. Corp.*, [2004] EWHC 2920 (Pat), Rogatnick Affirmation, Exhibit 7. As indicated above, courts often grant § 1782 applications stemming from English litigation proceedings. *See supra* p. 10. These cases illustrate that the English Judiciary is receptive to such assistance from U.S. courts pursuant to § 1782. *See Intel*, 542 U.S. at 264. Accordingly, this factor weights in favor of granting the Application.

It is also noteworthy that, under Second Circuit precedent, the second discretionary factor serves to deny the requested discovery only when it is positively shown that the foreign tribunal would reject the requested evidence. Thus, in *In re Application of Euromepa S.A.*, 51 F.3d at 1100, the Second Circuit held that the foreign tribunal's lack of receptivity to the requested evidence must be shown by a "clear directive" or "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782," such as "judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.* When such proof is lacking, the discovery should be allowed. "Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Id.* (citation omitted). Here, the English Court are clearly receptive to assistance pursuant to § 1782. Accordingly, the second *Intel* factor is satisfied, and favors the issuance of the requested discovery order pursuant to § 1782.

### C. The Applicants' Discovery Requests Are Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions or any Other Policies.

The third discretionary factor for a court to consider is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United States." *Intel*, 542 U.S. at 264-65. Section 1782 "contains no foreign-discoverability requirement." *Mees*, 793 F.3d at 303. "'[P]roof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original). Here, as noted above, the English House of Lords has explained that litigants in English courts are free to use lawful means to obtain evidence in other countries

13

without interference by the English judiciary. *See South Carolina Ins. Co.*, 1 A.C. 24, Ex. 6; *Nokia Corp.*, EWHC 2920 (Pat), Rogatick Affirmation, Exhibit 7.

No effort at circumvention underlies or motivates BGC's request here. On the contrary, the discovery sought is directly relevant to Applicants' claims in the English Litigation, and is not an attempt to avoid English restrictions on evidence-gathering.

Moreover, the Second Circuit discourages district courts in ruling on § 1782 applications from engaging in intricate investigations into whether the requested discovery is or is not available in the foreign jurisdiction. As the Southern District recognized in *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782 ("In re Kazakhstan")*,

> The Second Circuit has discouraged district courts in the context of section 1782 from "try[ing] to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." . . . To require a district court to determine such issues would involve it in a "speculative foray into legal territories unfamiliar to federal judges." . . . This sort of foray [] "would result in an unduly expensive and time-consuming fight about foreign law, undermining the twin aims of the statute."

110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) (alterations omitted; quoting *In re Application of Euromepa S.A.*, 51 F.3d at 1099 and *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997)). Indeed, "the Second Circuit has expressly rejected a 'foreign discoverability requirement' when analyzing the Intel factors." *In re Kazakhstan*, 110 F. Supp. 3d at 517. "[T]he district court need not satisfy itself that the discovery sought in the petition is of information that would be discoverable under the laws of the foreign jurisdiction in which the proceeding is pending." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998).

The third *Intel* factor does not impose a requirement that the party requesting discovery under § 1782 first exhaust all efforts to obtain the discovery in the foreign jurisdiction in order to demonstrate that the application is not an attempt to circumvent proof-gathering restrictions in the foreign jurisdiction. *See In re Imanagement Servs., Ltd.*, No. Misc. 05-89(FB), 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005), ("§ 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court."); *id.* at *5 (citing *In re Application of Malev Hungarian Airlines*, 964 F.2d at 100). "The fact that Imanagement requested relief under 1782 without first seeking an order from the Russian court therefore does not suggest that in doing so Imanagement was attempting to circumvent the rules of the foreign tribunal." 2005 WL 1959702, at *5. In any event, Applicants have requested the discovery sought herein from the Tradition Defendants in the English Litigation but the Tradition Defendants have refused to provide it on the ground that Leibowitz, Holyoake and Tradition America are based outside the English jurisdiction.

As in the cases cited, *Intel*'s third factor supports Applicants' request for discovery here.

### D.    The Discovery Sought is Not Unduly Burdensome

Finally, a court may consider whether the discovery requests sought are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The discovery requested by the Applicants is highly relevant to their claims in the English Litigation and would not be unduly burdensome to comply with. Moreover, the requested discovery is narrowly tailored in both time and subject matter to uncover information directly relevant to Applicants' claims in the English Litigation. The Fourth *Intel* factor supports BGC's request for discovery. The Court should therefore exercise its discretion to order the requested discovery.

## **CONCLUSION**

Applicants meet the statutory requirements of § 1782, and the discretionary *Intel* factors. The statute's underlying purposes favor the application. Therefore, Applicants respectfully request that this Court enter an order permitting it, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court, to issue to Leibowitz, Holyoake and Tradition America subpoenas *duces tecum* and to appear at a deposition to be examined on the documents produced.

A copy of a proposed order is attached as Exhibit 9 to the Rogatnick Affirmation submitted in connection with this Application.

Dated: New York, New York
       May 24, 2019

                                        BRYAN CAVE LEIGHTON PAISNER LLP

                                        By: /s/ Howard Rogatnick
                                        Howard M. Rogatnick (HR 3777)
                                        hmrogatnick@bryancave.com
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: 212-541-2000
                                        Facsimile: 212-541-4630

                                        *Counsel for Applicants*

16